UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-11934-RGS

UNITED STATES for the USE and
BENEFIT of METRIC ELECTRIC, INC.,

v.

CCB, INC. and THE HANOVER
INSURANCE COMPANY,

v.

BRIAN SAMPSON

MEMORANDUM AND ORDER ON CCB, INC.'S and THE HANOVER
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

August 25, 2016

STEARNS, D.J.

Metric Electric, Inc., (Metric) is suing federal contractor CCB, Inc., and its surety, The Hanover Insurance Company (Hanover), for allegedly terminating a subcontract "without cause." In the alternative, Metric seeks payment of "the pro rata share for its work performed to date." Pl.'s Opp'n at 1. CCB now moves for summary judgment, contending that Metric's breach of one or more material conditions of the contract forfeited any recovery at law, and that the ethical lapses of its owner (Brian Sampson) preclude any recovery in quantum meruit. Moreover, CCB argues that

Metric has no actionable claim under the Miller Act, 40 U.S.C. § 3133, given the absence of an enforceable contact.[1]

*Background*

The material facts, in the light most favorable to Metric, as the nonmoving party, are as follows.  CCB, the prime contractor, entered into an agreement with the General Services Administration (GSA) to renovate the John F. Kennedy Federal Building at Government Center in Boston (the Project).  CCB brought in Hanover as the required surety.  On December 2, 2013, CCB hired Metric to perform electrical work for the Project.  The value of Metric's subcontract was $1,380,301, with the work to be completed in four phases.[2]

The Subcontract required Metric to submit certified payroll reports and to pay the "prevailing wage" to its employees on a weekly basis, as required by the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq*, and the Massachusetts Wage Act, Mass. Gen. Laws. Ch. 149, § 148.[3]  From December

[1] Metric's claim under the Massachusetts Fair Business Practices Act is premised on the same breach of contract theory.

[2] These work stages were labeled Phase I, Phase IA, Phase II, and Phase III.

[3] "The Subcontractor shall furnish, at the request of the Contractor all forms of affidavits, certificates, and such other data as may be required by the Contractor in order to fully comply with the requirements of the owner." Defs.' Ex. 3 (Subcontract) ¶0.3.

21, 2013, through April 26, 2014, Sampson, the owner of Metric, signed weekly reports, under oath, certifying that Metric had paid its employees in full for the work performed the prior week on the Project.[4]  Despite the certifications, it is undisputed that Metric failed to pay wages to its employees during the first quarter of 2014.[5]

In March of 2014, Metric's six employees brought a lawsuit for unpaid wages in Essex Superior Court.  On April 6, 2016, a Superior Court Justice entered summary judgment for the employees.  *See Quigley, et al. v. Metric Electric, Inc.*, Essex Cty. Sup. Ct. Dep't, No. 1477-CV-00369 (Apr 6, 2016).  When it learned of the judgment, CCB advanced funds to Metric to pay its employees' back wages.  Metric did not do so, however, until July 9, 2014.  On April 23, 2014, Metric's employees quit work on the Project.

On May 5, 2014, CCB met with Sampson to express concern over "Metric's ability to provide ample manpower to meet the schedule requirements for the project."[6]  Defs.' Ex. 18 at 2.  Following the meeting,

---

[4] Sampson submitted the certifications to CCB at times in batches.

[5] In March of 2014 Sampson began paying his employees then current wages, but did not pay the back wages owed.

[6] Metric agreed that during the term of the contract it would, "at all times furnish adequate and competent labor, services, materials, equipment, tools and supervision so that its performance hereof maybe carried out without delay.  In the event Subcontractor is delayed by unforeseeable causes

Sampson briefly engaged an apprentice electrician to work with him on the Project. On May 16, 2014, CCB sent Sampson a notice declaring Metric in breach of its duty under the Subcontract to meet the required schedule and setting out in detail the work that remained uncompleted.[7] Defs.' Ex. 19 at 1. Metric abandoned the job altogether on May 30, 2014.

On June 10, 2014, CCB formally terminated the Subcontract, citing unpaid wages and failure to timely perform. CCB then hired a replacement subcontractor to complete the electrical work.[8] At the time of termination,

---

that are beyond the control and without the fault of the Subcontractor, including causes that are within the control or the fault of the Contractor, the Subcontractor shall be entitled to an equitable adjustment in its schedule." Subcontract ¶10.

[7] "The Subcontractor'[s] work shall be carried on promptly, with dispatch, and coordinated with other work on the project to the satisfaction of the Contractor. The Contractor shall have the right to order that certain parts of the work be commenced in preference to others, and the Subcontractor agrees that it shall not be entitled to any additional compensation as the result in such change in sequence. Subcontract ¶0.5.

"The purpose of this letter is to inform you that Metric Electric is in breach of the subcontract agreement with CCB because you are not meeting the schedule requirements for the project." Defs.' Ex. 19 at 1.

[8] "The Contractor shall have the right at any time, by written notice to the Subcontractor, to terminate this Subcontract without cause and at the Contractor's discretion." Subcontract ¶20. If the Subcontractor is in default, the Contractor has the right to, "terminate this agreement entirely and the Subcontractor shall be entitled to no monies of any kind but shall nevertheless remain liable for any damage the Contractor has suffered." Subcontract ¶22(b)

Metric had completed only 75% of the work on Phase I and 44% of the work on the entire job.  CCB had paid Metric $499,498.30 for work that had been done.

On May 29, 2015, Metric brought this Complaint in the federal district court against CCB and Hanover, alleging breach of contract (Count I), quantum meruit (Count II), violation of the Miller Act (Count III), and violation of the Massachusetts Unfair Business Practices Act, Gen. Laws ch. 93A, §§ 2 and 11 (Count IV).  CCB answered the Complaint and filed two counterclaims against Metric alleging breach of contract and violations of Chapter 93A.  In addition, CCB filed a cross-complaint against Sampson alleging fraud.[9]

## Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To succeed, the moving party must show that there is an absence of evidence to support the

---

[9] More specifically, CCB alleges that Sampson "intentionally made false statements to CCB in order to induce CCB to make payments not otherwise due to Metric and CCB reasonably relied to its detriment upon Sampson's false statements and misrepresentations."  Third-Party Compl. ¶¶ 17-18.

nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege the existence of a valid contract, that the plaintiff was ready and willing to perform, that the defendant breached the contract, and that the plaintiff sustained damages as a result. *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).[10]  If the breach by the accused party is material, the other party is excused from further performance as a matter of law. *Ward v. Am. Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-101 (1983).  A contract term is material if it involves "an essential and inducing feature" of the contract. *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930).  While the issue of the materiality of a breach is ordinarily one of fact for the jury, *Hastings Assocs., Inc. v. Local 369 Bldg. Fund*, 42 Mass. App. Ct. 162, 171 (1997), here Metric's failure to pay its employees in a timely fashion as required by Section 13 of the Subcontract, the federal Davis-Bacon Act, and the Massachusetts Wage Act, constituted a material breach of the

---

[10] Section 36(b) of the Subcontract states that "all of the terms and conditions of this Subcontract shall be construed according to the laws of the State of Maine unless otherwise specified in the General Contract."  The parties, however, cite only to Massachusetts law and frame their inequitable conduct claims under Massachusetts Chapter 93A.  The court will assume that the General Contract specifies Massachusetts as the choice of law (although the parties' briefs shed no enlightenment on the issue).

Subcontract as a matter of law.[11]   *See* 5 Bruner & O'Connor Construction Law

§ 18:28; *see also Kelso v. Kirk Bros. Mech. Contractors, Inc.,* 16 F. 3d 1173,

1176 (Fed. Cir. 1994).[12]   Metric's breach relieved CCB of any further duty to

perform under the Subcontract and hence any duty to continue to make

progress payments under its terms.   Consequently, Metric's claim of breach

of contract by CCB is doomed to fail.[13]

---

[11]   "The Subcontractor agrees further to pay wages and benefits as required by any federal wage determinations, and state wage rate determinations."   Subcontract ¶13.   Any attempt (as suggested at the hearing) by Metric to relitigate the issue of nonpayment of wages is precluded by principles of *res judicata.   See Blanchette v. Sch. Comm. of Westwood*, 427 Mass. 176, 179 n.3 (1988).

[12] A knowing and willful violation of federal labor laws and related state statutes is also ordinarily sufficient to justify contract termination.   *See* F.A.R. §§ 52.222-12 and 22.407(a); 48 C.F.R. §§ 52.222-12, 22.407(a).

[13] The claim that CCB waived Metric's prior breach of the Subcontract by providing it funds to make the employees whole is unavailing.   Putting aside the fact that CCB had the right (and responsibility) under the Subcontract to insure that workers were being paid in a timely fashion, a party asserting waiver bears the burden of proof.   *Sheehan v. Commercial Travelers Mut. Accident Ass'n*, 283 Mass. 543, 550 (1933); *Glynn v. Gloucester*, 9 Mass. App. Ct. 454, 462 (1980).   When a waiver is not explicit, as is the case here, there must be clear, decisive, and unequivocal conduct indicating that the party claimed to have surrendered a right would not have insisted on adherence to the contractual requirement at issue.   *KACT, Inc. v. Rubin,* 62 Mass. App. Ct. 689, 695 (2004); *D. Federico Co., Inc. v. Commonwealth*, 11 Mass. App. Ct. 248, 253 (1981); *Glynn*, 9 Mass. App. Ct. at 462.   Metric has offered no competent evidence sufficient to meet its burden on the issue of waiver.

In the alternative, Metric seeks the equitable intervention of the court to secure reimbursement for $158,823.14 in uncompensated work on the Project that it claims to have completed prior to the termination.  Quantum meruit is a theory of recovery (not a freestanding cause of action) that is "independent of an assertion for damages under [a] contract," *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 793 (1986).  "The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party." *Salamon v. Terra,* 394 Mass. 857, 859 (1985).

It is axiomatic that a party coming before the court seeking equitable relief must do so with clean hands.  *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 244 (1933).  This Metric cannot do.  Its failure to pay its employees in a timely fashion as required by state and federal law (as well as by the terms the Subcontract), compounded by Sampson's filing of perjured certifications of payment, bars Metric from entering any chamber of equity.  Consequently, the quantum meruit claim is a nonstarter.

The Miller Act is the final arrow in Metric's quiver.  The Miller Act requires a general contractor performing a federal construction contract valued at over $25,000 to obtain a performance bond for the protection of persons supplying labor and material to the work.  *See United States for Use*

*& Benefit of Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F. 3d 28, 31 (1st Cir. 1997), citing 40 U.S.C. § 270a(a)(2).  The Act further provides that workers who have "furnished labor or material" to a covered project may sue to recover amounts owed to them from the payment bond. *Id.*, citing 40 U.S.C. § 270b(a).  As a ticket of admission to recovery under the Miller Act, Metric must establish that it is entitled to damages under the Subcontract.  *See United States ex rel. John D. Ahern Co., Inc. v. J.F. White Contracting Co.*, 649 F.2d 29, 32 (1981).  Because Metric cannot do so, its Miller Act claim is also destined to fail.[14]

## ORDER

For the foregoing reasons, CCB and Hanover's motion for summary judgment is <u>ALLOWED</u> as to all four counts of Metric's Complaint.[15]

---

[14] Metric's claim of a Chapter 93A violation by CCB is based solely on the failed breach of contract claim and will accordingly be dismissed.  *Cf. Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 169 (2008); *see also R. W. Granger & Sons v. J & S Insulation, Inc.*, 435 Mass. 66, 73 (2001) ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law.").

[15] Counsel for CCB and Hanover advised the court at the hearing that if his clients prevailed on summary judgment, he would recommend that they not pursue the remaining counterclaims and third-party complaint.  Counsel will notify the court within fourteen (14) days of this Order of his clients' election in this regard.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE